IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 1, 2002

## STATE OF TENNESSEE v. CARLOS HAYNES

**Appeal from the Circuit Court for Madison County**
**No. 01-751     Roger Page, Judge**

---

**No. W2002-00315-CCA-R3-CD  - Filed November 6, 2002**

---

The Defendant, Carlos Haynes, pled guilty to possession of marijuana with the intent to sell, a Class E felony, and possession of drug paraphernalia, a Class A misdemeanor.  As part of his plea agreement, he expressly reserved with the consent of the trial court and the State the right to appeal a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(i).  The certified question of law concerns the validity of a search warrant.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

George Morton Googe, District Public Defender and David Chrichton, Assistant Public Defender, Jackson, Tennessee, for the appellant, Carlos Haynes.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Jerry Woodall, District Attorney General; and Angela Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 24, 2001, police officers executed a search warrant at 200 Lambuth Boulevard in Jackson, Tennessee.  During the search of the premises, officers observed the Defendant, Carlos Haynes, sitting on a couch in the living room.  The officers found marijuana and a set of scales in the kitchen.

On September 4, 2001, the Madison County Grand Jury returned an indictment charging the Defendant with two counts of possession of marijuana with the intent to sell or deliver and one count of possession of drug paraphernalia.  On December 21, 2001, the Defendant filed a motion to

suppress all the evidence seized at his residence. At the suppression hearing on January 14, 2002, the Defendant testified that he lived at 200 Lambuth Boulevard when the police executed the search warrant on those premises. He stated that, although the residence appeared to be a one-family residence, it was actually a duplex. The Defendant argued that the search warrant was invalid because it failed to adequately describe the place to be searched pursuant to State v. Stinnett, 629 S.W.2d 1 (Tenn. 1982). The court in Stinnett held that "generally a search warrant directed against a multi[-]unit dwelling is invalid unless it describes the subunit intended to be searched with sufficient definiteness to exclude the search of an unintended subunit." Id. at 3. The Defendant asserted that the warrant failed to describe how the house was divided; therefore the warrant did not describe the area to be searched sufficiently to exclude the search of an unintended area.

The trial court overruled the Defendant's motion, and the Defendant pled guilty on February 7, 2002, to possession of marijuana with the intent to sell and possession of drug paraphernalia. The Defendant expressly reserved the right to appeal a certified question of law. The trial court's Order Reserving Certified Question of Law states the question as "whether the search warrant is invalid because the subunit of a multiunit dwelling was not described with sufficient definiteness to exclude the search of an unintended subunit as required under State v. Stinnett, 629 S.W.2d 1 (Tenn. 1982), U.S.C.A. Const. Amendment 4, and the Tennessee Constitution Article 1, Section 7."

Tennessee Rule of Criminal Procedure 37(b)(2) provides that an appeal lies from any judgment of conviction entered pursuant to a plea of guilty or nolo contendere if
> (i) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case; or
> . . .
> (iv) Defendant explicitly reserved with the consent of the court the right to appeal a certified question of law that is dispositive of the case.

In State v. Preston, 759 S.W.2d 647 (Tenn. 1988), our supreme court set forth the following prerequisites for appellate review of certified questions pursuant to this Rule of Criminal Procedure:
> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive

of the case. . . . Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. . . . No issue beyond the scope of the certified question will be considered.

Id. at 650; see also State v. Pendergrass, 937 S.W.2d 834, 836-37 (Tenn. 1996); State v. Irwin, 962 S.W.2d 477, 478-79 (Tenn. 1998). The prerequisites for the consideration of the merits of a certified question of law as required by Preston having been met, we begin our analysis of whether the search warrant was invalid under Stinnett.

> The search warrant described the premises to be searched as follows:
> 200 Lambuth Boulevard is a multi dwelling made of wood construction[,] white in color with a gray shingle roof, and a white front door and gray storm door on the west side of the residence. The residence is situated on the east side of Lambuth Boulevard facing west with the numbers "200" clearly marked on the west side of the apartment next to the front door.

The house is situated on the corner of Gordon Street and Lambuth Boulevard. The front of the house faces south and is on Gordon Street. The main door to the Defendant's residence is on the west side of the house, which is on Lambuth Boulevard, and the numbers "200" hang prominently above the mailbox that is beside the door. The main door to the adjoining apartment is on the front side of the house. There is a mailbox by this door.

The Defendant testified that the apartment next to his has an address on Gordon Street, while his apartment is 200 Lambuth Boulevard. Inside the house, the two apartments were completely separated by a wall and one door. The Defendant stated that when the police were executing the warrant, he heard officers open the door leading to the adjoining apartment. On cross-examination, the Defendant admitted that the door on the west side of the house, through which the police came when they searched the apartment, is clearly labeled as 200 Lambuth Boulevard.

Investigator Tyreece Miller testified that he prepared the affidavit for the search warrant and also executed the warrant. He indicated in the affidavit that the house in question was a multi-unit dwelling. He testified that, while the address of the Defendant's apartment is 200 Lambuth Boulevard, the address for the adjoining apartment is 255 Gordon Street. Miller stated that the door to the Defendant's residence faces Lambuth Boulevard with the address displayed by the door, and the adjoining residence faces Gordon Street. When Miller and the other police officers searched the Defendant's residence, they entered through the door on the west side of the house that is labeled 200 Lambuth Boulevard. On cross-examination, Miller stated that officers "breached" the door connecting the two residences, but that once the officers saw that the door opened into another residence, they proceeded no further.

As we have already noted, State v. Stinnett states that "generally a search warrant directed against a multi[-]unit dwelling is invalid unless it describes the subunit intended to be searched with sufficient definiteness to exclude the search of an unintended subunit." 629 S.W.2d at 3. In this case, the search warrant described the subunit intended to be searched with sufficient definiteness to exclude the search of an unintended subunit. The warrant only authorized the search of 200 Lambuth Boulevard, where the Defendant lived. The adjoining apartment had a completely different address, 255 Gordon Street. The warrant also specified that the entrance to the subunit to be searched was "on the west side of the residence . . . with the numbers '200' clearly marked on the west side of the apartment next to the front door." Furthermore, the warrant notified the officers that the house was a multi-unit structure.

The Defendant argues that the warrant was invalid because it did not mention or describe the adjoining unit. However, Stinnett simply requires that "the subunit intended to be searched" be described "with sufficient definiteness to exclude the search of an unintended subunit." Id. It does not require a description of any subunits not to be searched.

The Defendant also contends that the search warrant was invalid because it failed to delineate the interior boundaries of each unit. He points out that there is no description in the warrant of which rooms comprise 200 Lambuth Boulevard. As we have already mentioned, the apartments were separated by a wall and one door. However, for the officers to be able to describe in detail the layout of the interior of each subunit when obtaining the search warrant, it would be necessary for them to view the interior of the premises. The requirement that the search warrant describe with definiteness the place to be searched does not entail a precise description of the interior layout of the residence.

Finally, the Defendant points to the fact that the officers opened the door connecting the Defendant's apartment with the adjoining unit as evidence that the search warrant did not sufficiently describe the premises to be searched so as to exclude all others. While the opening of the door may have constituted an illegal search of the adjoining apartment, it does not render the search warrant for the Defendant's apartment invalid. The warrant states the address of the Defendant's unit, which was completely different from the adjoining unit. The warrant also describes the door entering the Defendant's residence, which is on the west side of the house. The warrant indicates that the house is a multi-dwelling structure. The police officers were on notice that they were authorized to search only the area behind the door marked 200 Lambuth Boulevard. For these reasons, we find that the search warrant was valid.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

-4-